Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 995 | **DATE** | 12/16/2004 |
| **CASE TITLE** | Jacobs vs. Paul Revere Life Ins Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Jacobs' motion (Doc 19-1) for partial summary judgment is denied and Paul Revere's motion (Doc 22-1) for summary judgment is granted. This is a final order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 17 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | JXM docketing deputy initials | 2B |
| | Copy to judge/magistrate judge. | | | |
| | SCT courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN E. JACOBS, )
)
Plaintiff, )
)
vs. ) 04 C 0995
)
THE PAUL REVERE LIFE INSURANCE )
COMPANY, d/b/a UNUMPROVIDENT, )
)
Defendant. )

**MEMORANDUM OPINION**

DOCKETED
DEC 1 7 2004

CHARLES P. KOCORAS, Chief District Judge:

The present matter comes before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, Steven Jacobs' ("Jacobs") motion for partial summary judgment is denied. The Paul Revere Life Insurance Company's ("Paul Revere") motion for summary judgment is granted.

**BACKGROUND**

The facts of this case have been previously set forth in detail in this court's opinion in Jacobs v. The Paul Revere Life Insurance Co., No. 04 C 0995, 2004 U.S. Dist. LEXIS 11171 (N.D. Ill. June 17, 2004). Only those facts relevant to these cross-motions for summary judgment are summarized below. Jacobs is a commodities trader

at the Chicago Mercantile Exchange. In 1986, Jacobs suffered a herniated and extruded disc that required him to undergo surgery. In 1991, Jacobs became interested in procuring disability insurance to obtain coverage for loss of income resulting from inability to engage in floor trading due to any potential future injuries or sicknesses. That same year, Jacobs purchased disability income insurance policy number 0102517193 ("the policy") from Paul Revere. He disclosed his previous back injury on his policy application, and the issued policy contained a rider to the effect that benefits for "any loss resulting from the sacro-iliac or the lumbosacral joints, or the lumbar spine" would be paid for a period of twelve months ("the exclusion"). For other losses, policy benefits would continue until Jacobs turned 65. Jacobs was 33 when he bought the policy.

On October 5, 2001, Jacobs suffered a low back injury while playing tennis. In November 2001, at the age of 43, Jacobs filed a claim for benefits with Paul Revere, stating that he was totally disabled because of low back problems. Paul Revere paid benefits (totaling $87,000.00) to Jacobs for twelve months. Thereafter, Jacobs informed Paul Revere that the exclusion should have been removed from his policy. Jacobs claims that Mark Brody ("Brody"), the agent who sold him the policy, told him when he purchased the policy that the exclusion would be removed from the policy if he remained symptom-free for two years after the policy issued.

At first, Paul Revere informed Jacobs that the exclusion had not been removed because he had not requested its removal. After he formally requested its removal, he was told that the exclusion would remain in the policy because he had not made the request in a timely manner.

In early 2004, Jacobs filed suit in the Circuit Court of Cook County, Illinois. The complaint sought a declaratory judgment that Jacobs had satisfied all the requirements to have the exclusion removed from the policy and that he was entitled to continuing benefits for his back problems. The complaint also claimed that Paul Revere was estopped from enforcing the exclusion and sought to reform the policy if the court found that the contract did not provide that the exclusion could be removed. Paul Revere removed the case to this court, and sought a declaration that the policy is not ambiguous and a consequent exclusion of all parol evidence bearing on the meaning of the policy terms. On June 17, 2004, we ruled that the contract is ambiguous on the issue of whether a document entitled "Policy Issue Information Sheet"[1] (the "information sheet") is among the documents making up the totality of the

---

[1] In a section discussing loss resulting from back problems, the Policy Issue Information Sheet states "On request, reconsideration can be given to removal, modification or reduction subject to NO RECURRENCE, PHYSICIAN'S STATEMENT, IN 02 YRS."

agreement, and accordingly denied the motion for a declaration that the policy is unambiguous and Paul Revere's request to bar parol evidence.

Jacobs now moves for partial summary judgment asserting that the information sheet was part of the policy itself, and thus contained a reconsideration offer that entitled Jacobs to removal of the exclusion in the policy. The removal of the exclusion, according to Jacobs, was subject to his satisfaction of a condition that he suffered no recurrence of his prior back problems during the two year period following issuance of the policy. Alternatively, Jacobs asserts that Paul Revere's conduct and representations to Jacobs that the exclusion would be removed from the policy if he had no recurrence of low back problems during the two years following issuance of the policy coupled with Jacobs' reasonable detrimental reliance thereon, estops Paul Revere from asserting the exclusion as a basis for denying continuing disability benefits under the policy.

Paul Revere moves for summary judgment asserting that the language of the information sheet and the parties' conduct at the time the policy was delivered establishes that the information sheet was not intended to confer contractual rights upon the parties as a policy rider, amendment, or endorsement. Paul Revere further asserts that even if the information sheet is assumed to constitute part of the policy,

-4-

Jacobs cannot prevail as a matter of law because his action is barred by the doctrine of laches.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact ." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia

v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record–only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). With these principles in mind, we turn to the parties' motions.

## DISCUSSION

In a previous opinion we held that because the policy is ambiguous as to whether the information sheet was intended to be part of the indemnity contract, extrinsic evidence is necessary to determine whether the parties intended the policy to include the terms referenced within the information sheet. See Jacobs, 2004 U.S. Dist. LEXIS 11171, at *9. The threshold issue here is whether the information sheet is part of the

-6-

indemnity contract between Jacobs and Paul Revere. Based upon the extrinsic evidence on record thus far and Illinois law on the topic, we conclude that it is.

**A. The Information Sheet**

In 1991, when Jacobs became interested in purchasing disability insurance, he met with Brody, who was then Paul Revere's general sales manager in Chicago. At the meeting, Jacobs disclosed his prior back surgery to Brody and voiced concern regarding the effect this would have on disability coverage. When the insurance application was completed, Brody explained that any disability policy issued by Paul Revere would probably contain a rider limiting coverage for back-related disabilities. According to Jacobs, Brody further stated that the rider would be removed if Jacobs went symptom free for two years.

Shortly thereafter, Brody discussed with Andrew Borraccino ("Borraccino"), a Paul Revere underwriter, various benefit alternatives available to Jacobs. Borraccino prepared an action sheet which authorized issuance of the policy on the terms requested by Brody per his discussion with Jacobs. It is undisputed by the parties that when the policy was underwritten, it was approved with two very specific reconsideration offers. The first related to the policy rating, and the second related to the twelve-month benefit limitation regarding Jacobs' previous back condition. Subsequently, Paul Revere sent a package of policy documents to Brody for delivery to Jacobs. Brody met with Jacobs

and explained the terms of the policy, using the information sheet as a guide. At the end of the meeting, Brody gathered the policy documents, put them in a clear plastic folder, and handed the folder to Jacobs. One of the documents in the folder was the second page of the information sheet; the page that described the reconsideration offer relating to Jacobs' back condition.

Paul Revere advances several arguments claiming that the information sheet is not incorporated into the policy as an amendment, rider, or endorsement, none of which are convincing. Namely, Paul Revere argues that because the information sheet is a loose document not physically attached to the policy, it is not incorporated into the policy.

Illinois courts have recognized that a document related to an insurance policy which is provided to an insured should be treated as part of the insurance contract, particularly when the document contains terms that relate to coverage which are relied upon by the insured. See Dobosz v. State Farm Casualty Co., 458 N.E.2d 611; 120 Ill. App. 3d 674 (2d Dist. 1983) (holding that plaintiff's reliance on an advertising brochure in selecting an insurance policy should be treated as part of the insurance contract between the parties); see also Jensen v. USAA Property and Casualty Co., 614 N.E.2d 1361; 246 Ill. App. 3d (2d Dist. 1993) (holding that a form describing uninsured motorist coverage mailed to the insured with the policy was incorporated

-8-

into the policy); see also St. Paul Insurance Co. v. Armas, 527 N.E.2d 921; 173 Ill. App. 3d 669 (1st Dist. 1988) (holding that a policy and related documents executed as a part of one transaction and accompanying the policy or incorporated by reference must be construed together in order to determine the meaning and effect of the insurance contract).

Here, Brody gave the second page of the information sheet to Jacobs, either purposefully or inadvertently. The mere fact that the sheet was not physically attached does not *per se* defeat the argument that the information sheet was part of the policy. Under Illinois law, physical affixation is not necessarily the test. Rather, where an insurance contract consists of a policy and other documents executed as part of one transaction and accompanying the policy or incorporated therein by reference, they must be construed together to determine the meaning and effect of the indemnity agreement. St. Paul Insurance Co., 527 N.E.2d at 924; 173 Ill. App. 3d at 674. The information sheet was executed as part of one transaction relating to Jacobs' disability policy. It accompanied the policy in a folder that Brody handed to Jacobs. It contained terms that related to coverage and referenced the policy. We therefore conclude, based upon the extrinsic evidence and the abovementioned principles of Illinois law, that the information sheet is part of the indemnity contract between Jacobs and Paul Revere.

Even though we construe the information sheet as constituting part of the indemnity contract, Jacobs' claim for removal of the policy's exclusion, based upon his December 2001 request for consideration, is without merit and is fatal to his cause of action as a matter of law.

**B. Removal of the Exclusion**

Jacobs argues that Paul Revere should have automatically removed the exclusion contained in the policy in 1993, even though it is undisputed that Jacobs failed to request reconsideration until December 2001. Paul Revere counters that the two-year period referenced in the information sheet established the time after the date of the policy's issuance when Jacobs could first reasonably request reconsideration of the policy's exclusion. Paul Revere claims that the two year period was put in place because any lesser period would have been too minimal for its underwriters to sufficiently evaluate the insurance risks created by Jacobs' history of back surgery. Paul Revere argues that it was willing to evaluate Jacobs' back condition as it existed during the entire period of time up to the date when Jacobs made his request for reconsideration. Paul Revere claims that because Jacobs waited until December 2001 to request reconsideration, which was shortly after he claimed a disabling disc herniation in October 2001, Paul Revere properly declined to remove the exclusion

from the policy because Jacobs failed to establish that he had sustained "no recurrence" of back symptoms prior to the time of his request.

Jacobs maintains that Paul Revere was obligated to remove the exclusion automatically as of 1993 even without his request. Further, Jacobs seeks to confine Paul Revere's reconsideration to the time period between 1991 and 1993, based upon a two year time limit purportedly established by the terms of the information sheet. He argues that he was entitled to the removal of the exclusion in the policy as long as there was no recurrence of low back symptoms during the two year time period. We cannot agree with Jacobs' narrow reading of the reference contained in the information sheet.

First, the reference to "NO RECURRENCE, PHYSICIAN'S STATEMENT, IN 02 YRS" that appears in the information sheet, identifies conditions precedent which Jacobs had to satisfy in order to have requested reconsideration of the exclusion. Jacobs failed to satisfy these conditions. Most notably, Jacobs did not provide Paul Revere with a physician's statement evidencing no recurrence of low back symptoms.

Next, regarding the purported two-year time limitation, the time period referenced in the information sheet establishes the date on which Jacobs may first request reconsideration. Nothing in the policy, information sheet, or any extrinsic evidence indicates that once a reconsideration request is made, Paul Revere could not

look to Jacobs' medical history outside of the two-year time period up until the date of the request.

Because Jacobs failed to satisfy the conditions precedent, he cannot successfully demand that Paul Revere is obligated to remove the exclusion contained in the policy. Further, Paul Revere was not confined to only look to Jacobs' medical history between the two-year period from 1991 to 1993. When Jacobs finally requested reconsideration, Paul Revere was entitled to consider his October 2001 back injury in determining coverage under the policy. Therefore, with the exclusion still in place and Jacobs' recurrence of back problems, Paul Revere's only contractual obligation was to provide twelve months of disability coverage, totaling $87,000.00, which it has already provided to Jacobs.

## C. The Doctrine of Estoppel

Jacobs argues in the alternative that Paul Revere's conduct and representations to Jacobs, through its agent Brody, that the exclusion would be removed from the policy if he had no recurrence of low back problems during the two years following issuance of the policy coupled with Jacobs' reasonable detrimental reliance thereon, estops Paul Revere from asserting the exclusion as a basis for denying continuing disability benefits under the policy.

The doctrine of estoppel may apply when a party changes its position in reasonable reliance on the words or conduct of another party, and is harmed as a direct result thereof. Allstate Insurance Co. v. Tucker, 533 N.E.2d 1004, 1006; 178 Ill. App. 3d 809, 811 (1st Dist. 1989). In order to establish estoppel in the insurance context, an insured must prove (1) that he was mislead by the acts or representations of the insurer, (2) that he reasonably relied on those representations, and (3) that his reliance caused him compensable harm. Id. Estoppel must be proven by "clear, concise, and unequivocal evidence." Western Casualty & Surety Co. v. Brochu, 475 N.E.2d 872, 879; 105 Ill. 2d 486, 500 (1985). Jacobs has not proven *reasonable* detrimental reliance by clear, concise, and unequivocal evidence.

Jacobs' reliance was not reasonable because he did not read the indemnity contract. The present situation is one where an insured individual is attempting to invalidate part of an insurance policy. An insured individual in this position is charged with the duty to read the policy and inform the insurer of any discrepancies in coverage. Floral Consultants, Ltd. v. Hanover Ins. Co., 470 N.E.2d 527, 529; 128 Ill. App. 3d 173, 176 (1st Dist. 1984). An insured is charged with the knowledge of the contents of the policy irrespective of whether or not the insured read it. See Florsheim v. Travelers Indemnity Co., 393 N.E.2d 1223, 1231; 75 Ill. App. 3d 298, 307 (1st Dist. 1979). It is undisputed that Jacobs failed to read his policy. Jacobs admits that he was

satisfied with Brody's description of the policy and never examined the contents of the folder that was handed to him. Jacobs' failure to read the policy renders his reliance unreasonable.

Moreover, Jacobs could not have reasonably relied upon Brody's alleged representations that the exclusion would automatically be removed in two years, even without Jacobs' request for its removal and without his submission of a physician's statement. The information sheet does not represent that removal would be automatic, but instead conditions reconsideration on submission of a request for reconsideration, no recurrence of symptoms, and the furnishing of a physician's statement. It was unreasonable for Jacobs to rely on oral representations that were directly inconsistent with the terms of the information sheet.

**D. The Doctrine of Laches**

Paul Revere also advances the argument that the doctrine of laches serves to bar Jacobs from asserting a right to removal of the exclusion. The Illinois Supreme Court has defined laches as the "neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party" that will operate to bar relief. Sundance Homes, Inc. v. County of DuPage, 746 N.E.2d 254, 270; 195 Ill.2d 257, 270 (2001). For laches to apply, a

plaintiff must have either actual or constructive knowledge of a right, yet fail to assert it in a timely manner. Id.

Jacobs clearly knew or reasonably should have known when the policy was delivered in 1991, that he could request reconsideration in two years. However, Jacobs waited until December 2001 before requesting Paul Revere's reconsideration of the exclusion. Jacobs claims that Paul Revere's laches defense must be rejected because it has failed to show any prejudice resulting from Jacobs' delay in requesting removal of the exclusion. We disagree.

Paul Revere was prejudiced by Jacobs' delay in requesting reconsideration as the passage of time diminished Paul Revere's ability to adequately assess Jacobs' lumbar condition between 1991 to 1993. There is no contemporaneous physician's statement based upon a contemporaneous medical examination available for Paul Revere's consideration. Even in December 2001, when Jacobs made his request for reconsideration, he did not tender a physician's statement to Paul Revere.

Moreover, Paul Revere has been prejudiced because Jacobs' request for reconsideration came after his disabling injury in October 2001. This prejudices Paul Revere as it constitutes an attempt to extend the policy's coverage to insure a loss that has already occurred. In sum, there is merit to the argument that the doctrine of laches

precludes Jacobs from waiting to request reconsideration as evidence of his lumbar condition went stale.

## CONCLUSION

Based on the foregoing analysis, Jacobs' motion for partial summary judgment is denied and Paul Revere's motion for summary judgment is granted.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC 1 6 2004